Denise BROSZKO, Individually and as a Parent and Natural Guardian of Michael Broszko, Ryan Broszko, Brandon Broszko and Briana Broszko, Appellants,

v.

PRINCIPAL MUTUAL LIFE INSURANCE COMPANY, and Iowa Corporation, Respondent,

The Movers, Inc., d/b/a Movers, Defendant,

Don Omodt, Hennepin County Sheriff, Respondent.

No. C3-95-479.

Court of Appeals of Minnesota.

July 3, 1995.

Ned E. Ostenso, Dudley R. Younkin, Merrigan, Johnson, Quayle & Younkin, Minneapolis, for appellant.

Denis E. Grande, Steven J. Holland, Mackall, Crounse & Moore, Minneapolis, for Principal Mut. Life Ins. Co.

Michael O. Freeman, Hennepin County Atty., Karla F. Hancock, Sr. Asst. County Atty., Minneapolis, for Don Omodt, Hennepin County Sheriff.

Considered and decided by PARKER, P.J., and HARTEN and HOLTAN,* JJ.

## OPINION

PARKER, Judge.

Deputies of former Hennepin County Sheriff Don Omodt executed a writ of restitution against Tina and Michael Borgen and also removed Denise Broszko and her children, along with their belongings, from property owned by Principal Mutual Life Insurance Co. (Principal). Broszko filed numerous claims against both Principal and Omodt. The district court granted summary judgment against Broszko. We affirm as to both respondents.

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## FACTS

Tina and Michael Borgen owned a house subject to a mortgage held by respondent Principal. In June 1993, Principal foreclosed the mortgage; the redemption period expired on December 14, 1993. The Borgens did not redeem.

Tina Borgen met appellant Denise Broszko in a treatment program. In July or August 1993, Borgen told Broszko and others that they could live with her temporarily in the house. Borgen informed Broszko that Principal had foreclosed and that Broszko would be required to leave. In September, Borgen went to live elsewhere but left most of her personal property in the house. Also in September, Borgen asked Broszko to move out. A discussion ensued and Borgen told Broszko that she must move out by December 15, 1993, the day after expiration of the redemption period. Borgen stated that she asked Broszko to forward any notices or other information concerning Principal's anticipated action to take possession. Borgen next visited the house in February 1994 to find her possessions, and Broszko, gone.

After expiration of the redemption period, Principal sent a letter to the house, dated December 17, 1993, asking the occupants to leave and stating that Principal would file an unlawful detainer action. Broszko says she did not see the letter. On January 18, Principal initiated an unlawful detainer action. The process server failed to make personal service. However, a copy of the summons and complaint was posted on the property on January 21 and received by Broszko. She did not attend the hearing on January 28, 1994; she claims she arrived at the courthouse ten minutes late. The court ordered issuance of a writ of restitution.

After the hearing, Broszko called Principal's attorney to ask about the hearing and when she had to leave. This was the first information Principal received regarding the presence of Broszko in the house. On February 4, 1994, deputies served the writ on

pointment pursuant to Minn. Const. art. VI, § 10.

occupants of the house. They returned with movers on February 22 to clear the house.

Broszko sued, seeking damages from both Principal and Omodt. Broszko bases her claims on the existence of a tenancy. She argues that she lived on the property in a landlord-tenant relationship with Borgen which called for rental payment of $400 per month. Initially, she stated that she paid rent each month she lived in the house. However, Broszko later admitted that rental receipts she produced were forged. The district court found Broszko paid $400 in August and might have paid $400 another month. Broszko conceded that she had not paid rent as she described in her affidavit. Broszko also conceded that Borgen told her about the foreclosure and impending action to take possession but that she did not know the dates.

All parties filed summary judgment motions. The district court denied Broszko's motion and granted summary judgment for Omodt and Principal. Broszko appeals.

## DISCUSSION

The determinative issue is whether the district court properly determined as a matter of law that Broszko was not a tenant entitled to protection under Minn.Stat. §§ 566.01–.18 (1992). On an appeal from summary judgment we examine (1) whether there are any genuine issues of material fact, and (2) whether the district court correctly applied the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In the district court, once respondents made out a prima facie case for summary judgment, appellant was required to come forward with evidence to demonstrate the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review the district court's application of the law de novo. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

■ Chapter 566 mandates procedures for one entitled to possession of property to follow in removing tenants from possession of the property. These requirements include providing one month's written notice to vacate. Minn.Stat. § 566.03, subd. 1(1). Broszko argues that she was a tenant entitled to the protection of chapter 566, including the written-notice requirement. Broszko seeks damages because Principal and Sheriff Omodt's deputies removed her from the property *without affording* her the procedure prescribed for removal of tenants.

Broszko directs us to the definition of "tenant" found in chapter 566:

[A]ny person who is occupying a dwelling in a building * * * under any agreement, lease, or contract, whether oral or written, and for whatever period of time, which requires the payment of moneys as rent for the use of the dwelling unit, *and all other regular occupants* of that dwelling unit.

Minn.Stat. § 566.18 (emphasis added). According to Broszko, the definition covers her because either (1) she had an agreement with Tina Borgen, or (2) she was an "other regular occupant[ ]" of the house. As evidence, Broszko offered the forged receipts and her sworn testimony that she paid rent to Borgen, though she later admitted that she lied about paying rent through February 1994.

We hold that, within the statutory definition, Broszko was not a tenant of Borgen at the time of her removal from the property. Broszko did not introduce evidence of an agreement, lease, or contract. At most, Broszko paid $400 to Tina Borgen in each of two months. However, Borgen told Broszko that the property was foreclosed and that Broszko would have to move out. Broszko paid no money to Borgen during the last five months she lived in the house. Broszko concedes she had no relationship with Principal, the owner of the property.

■ Most importantly, Tina Borgen did not possess the power to create the tenancy Broszko claims. Borgen was merely a "former owner[ ] remaining on the land during the redemption period." *Federal Land Bank of St. Paul v. Obermoller*, 429 N.W.2d 251, 258 (Minn.App.1988), *pet. for rev. denied* (Minn. Oct. 26, 1988). A former owner (i.e., mortgagor) retains the right to possess the property until the end of the redemption period. *Mutual Benefit Life Ins. Co. v.*

*Frantz Klodt & Son, Inc.,* 306 Minn 244, 248, 237 N.W.2d 350, 353 (1975). In *Obermoller,* however, we clarified that such former owners are not "tenants" of the new owner within the meaning of the chapter 566. *Obermoller,* 429 N.W.2d at 258.

■ A lessor can convey only the interest in the property that the lessor holds. *Schrunk v. Andres,* 221 Minn. 465, 470, 22 N.W.2d 548, 551 (1946). Tina Borgen was not a tenant of Principal and had nothing more than the right of a former owner to remain in possession until December 14, 1993. *See Obermoller,* 429 N.W.2d at 258. As a matter of law, Borgen could convey nothing more than the right to live in the house until December 14. *See Schrunk,* 221 Minn. at 470, 22 N.W.2d at 551. Thus, no valid agreement could have derived from Borgen and given Broszko the right to remain in the house after December 14, 1993.

In February 1994, construing all factual conflicts in her favor, Broszko was at most a "prior tenant" of Borgen, the former owner. Minnesota law holds that "a person entitled to the possession of premises may, in the absence of agreement, treat a prior tenant holding over either as a trespasser or waive the trespass and treat him as a tenant." *Id.,* 22 N.W.2d at 552. Broszko had no agreement with Principal, and Principal did not elect to treat her as a tenant. Thus, after December 14, 1993, Broszko was a trespasser on Principal's property.

■ Finally, we cannot agree that the language "other regular occupants" opens the door to define someone in Broszko's position as a tenant. This language attaches tenant status to persons who live in a dwelling unit subject to a valid agreement, lease, or contract, *in addition to* the lessee or renter. The most common beneficiaries of this clause are children of lessees or renters, who regularly live with their parents but are not named in any agreement. The connecting word "and" makes clear that someone in the group must have an agreement with the owner before the law views the "other regular occupants" as tenants; the word "that" before "dwelling unit" in the last phrase is a reference to the prior language describing the kind of binding promise necessary to create a tenancy.

*Obermoller* illustrates this point. The Obermollers were former owners living on the premises during the redemption period. *Obermoller,* 429 N.W.2d at 253. They were "regular occupants" in the sense that Broszko uses the phrase. However, this court held that the Obermollers were not "'tenants' [of the new owner] within the meaning of [Minn.Stat. § 566.18] because they were neither renting nor leasing the property." *Id.* at 258. No one living on the property had a valid agreement. *Id.* Similarly, as discussed above, Broszko was neither renting nor leasing the property when the deputies removed her from it. Moreover, Broszko was not a former owner. In addition, unlike *Obermoller,* the redemption period had expired more than two months before Broszko's removal. Thus, Broszko's position is far weaker than the Obermollers'. Broszko was not a tenant.

## DECISION

Because Broszko was merely a trespasser at the time Principal filed its unlawful detainer action and when sheriff's deputies removed her from Principal's property, Minnesota's unlawful detainer statute does not apply to Broszko. Thus, the alleged violation of chapter 566 cannot serve as the basis for Broszko's claims. The district court did not err when it granted summary judgment for both respondents.

Because of the foregoing holding, it is unnecessary for this court to address the question of the sheriff's immunity from suit based upon his actions in properly serving court orders and writs.

**Affirmed** as to both respondents.